Hibbard, P. J.
These two cases present the same question for determination. They were tried together. While separate reports were established, they were argued as one before this tribunal and this opinion is to govern both.
They are actions of contract in which the plaintiffs seek to recover from the defendant certain vacation pay. The defendant is a municipal corporation which accepted Chap. 217 of the Acts of 1914 relating to the vacations of laborers *369 employed by cities and towns which chapter as most recently amended is now found in the Acts of 1932, chapter 109. The plaintiffs in their several declarations claim that said statute constituted a part of the term of their employment and that thereunder they were entitled to two weeks” vacation with pay which the defendant failed to grant them The answer in each case was a general denial and a further allegation that “the plaintiff did not actually work for the City of Springfield for thirty-two weeks in the aggregate during the period of twelve months and that under the terms of General Laws, chapter 41, §111 as amended the plaintiff is not entitled to receive the amount claimed.”
At the trial it was agreed that the plaintiffs were first employed as laborers during the week ending October 28, 1933 on a thirty hour a week basis, for which services they were to be paid at the rate of fifty-six cents an hour or for a full thirty hour week the sum of $16.80; that they were city employees chosen under the provisions of the Civil Service Laws and worked on street projects executed under an agreement between the city and federal governments commonly known as a PWA contract which provided that all employees engaged on such projects should work thirty hours per week; that under the terms of the then existing PWA contract thirty per cent, of the cost of the projects was contributed to the city by the Federal Government and the remainder of the costs of the project was paid by the city with money raised either by appropriation • or loans; that the plaintiffs were not employees of the federal government but of the city of Springfield paid by the city weekly with municipal funds and directly under the control and direction of city officials; that the plaintiff DeWeerdt worked a total of twelve hundred twenty-seven and one-half hours and the plaintiff McCann a total of fifteen hundred and thirty hours; that on November 3, 1914, the city duly accepted Chapter 217 of 1914; that the *370 plaintiffs were suspended by the Superintendent of Streets of the defendant on October 11,1934, for lack of work under the provisions of the civil service law; that the. plaintiffs have requested of the Superintendent of Streets and Engineering two weeks’ vacation with pay, and said Superin-' tendent has refused to grant said vacation because he did not believe said plaintiffs were legally entitled to it. -
The defendant introduced without objection an ordinance accepting the Acts of 1916, chapter 240, §1, now G-. L. (Ter. Ed.) chapter 149, §30. This section in effect restricts the service of all laborers in any city or town which has accepted said section to a maximum of eight hours of labor in any one day and forty-eight hours in any one week.
Requests for rulings were seasonably filed by the defendant of the following tenor:
1 “1. That the words in General Laws (Ter. Ed.), chapter 41, section 111, as amended by Acts 1932',. Chapter 109, ‘A person shall be deemed to be regularly employed, within the meaning of this section,'if. he.has' actually worked for the city or town thirty-weeks in. the aggregate’ means that such person must actually work thirty-two full time weeks and not thirty-two part time weeks.
2. That the words in General Laws (Ter. Ed.) chapter 41, section 111, as amended by Acts 1932, chapter 109, 6 A person shall be deemed to be regularly employed, within the meaning of this section, if he has actually worked for the city or town thirty-two weeks., in the aggregate’ means that such person must actually work thirty-two forty-eight hours weeks in a city where forty-eight hours is the standard work week for laborers.
3. That the words in General Laws (Ter. Ed.) chapter 41, section 111, as amended by Acts 1932, Chap*ter 109, 'A person shall be deemed to be regularly employed, within the meaning of .this section, if he has actually worked for the city or town thirty-two weeks in the aggregate’ means that such person, if employed on a part time basis of thirty hours a week, must work thirty-two full time weeks.
*371 4. That the words in General Laws (Ter. Ed.) chapter 41, section 111, as amended by Acts 1932, Chapter 109, ‘A person shall be deemed to be regularly employed, within the meaning of this section, if he has actually worked for the city or town thirty-two weeks in the aggregate’ means that such person if employed on the basis of thirty hours a week, must work thirty-two forty-eight hour weeks in a city where forty-eight hours is the standard work week for laborers.
5. An implied term in a contract of employment cannot be made part of a contract unless it is indispensable to effectuate the intention of the parties to the contract.
6. A city is without authority to grant vacations to laborers except in accordance with the provisions of the statute applicable thereto, and a contract made with a person by a city is unenforceable when the contract gives such person greater vacation benefits than the statute affords.”
The Trial Court granted those numbered 1, 5 and 6. The second was denied “The Court having found to the contrary”. The third was denied for the same reason. The fourth was denied “in view of the finding of the Court.”
The Court made the following special findings of fact:
“The court, from the agreed facts, finds that the plaintiff was regularly employed by the defendant within the provisions contained in General Laws (Ter. Ed.) chapter 41, §111, as amended by chapter 109 of the Acts of 1932; that the plaintiff actually worked for the defendant thirty-two weeks in the aggregate during the preceding twelve months from the time his services were suspended, even though he has not worked more than thirty hours a week; that the plaintiff was regularly employed by the defendant in its service for thirty hours in every week for more than thirty-two weeks in the aggregate during the said, preceding twelve months; and that the plaintiff is entitled to an annual vacation of two weeks with pay at the regular weekly rate of pay he had been receiving.
The court is of the opinion that the fact that the plaintiff was not required to work forty-eight hours a week as permitted by law should not deprive him of *372 the vacation privilege provided by the aforesaid statute so long as he was a regular weekly employee of the defendant;”
and assessed damages in each case in the sum of Thirty-three dollars and sixty cents ($33.60).
Briefly stated, the contention of each plaintiff is that he is entitled to a vacation since he worked thirty-two thirty hour weeks within a period of twelve months. The contention of the defendant is that the words “Thirty-two weeks in the aggregate” in the applicable statute means thirty-two full weeks; that a week under the provisions of G. L. Ch. 149, §30, an Act accepted by the city, means a forty-eight hour week and that to be entitled to a vacation, the plaintiff must have worked thirty-two forty-eight hour weeks.
The material portions of G. L. Chap. 41, §111 are as follows:
“In any city which accepted Chap. 217 of the Acts of 1914, the city council may determine that a vacation of two weeks without loss of pay shall be granted to every person regularly employed by such city as a common laborer, skilled laborer, mechanic or craftsman. If such vacations are authorized, they shall be granted by the heads of the executive departments of the city at such times as in their opinion will cause the least interference with the performance of the regular work of the city. A person shall be deemed to be regularly employed within the meaning of this section if he has actually worked for the city or town for thirty-two weeks in the aggregate during the preceding calendar year notwithstanding that he has ceased otherwise than by voluntary withdrawal or dismissal for cause in accordance with law to be in the employ of the city. The Department of Labor and Industries shall enforce this section and shall have all the necessary powers thereto.”
In order to sustain the defendant’s position we would be obliged to interpret the words “actually worked” as mean *373 ing thirty-two full forty-eight hour weeks and further that the legislature had in mind when enacting this law that a city laborer’s week was a forty-eight hour week. With these views we are not in accord. It seems to us that the legislature intended to authorize cities and towns to grant vacations with pay but in order that such rights might not be abused expressly provided each laborer to be entitled thereto must have worked thirty-two full weeks in the aggregate and that the full week must be measured by the number of hours established as the working week during the period within which the thirty-two weeks are to be measured. Any other construction seems to lead to a chaotic condition and almost absurdity. Moreover it would give an opportunity to nullify the rights of these laborers by fixing the hours of employment at less than the maximum of forty-eight hours. It has been agreed that the employment of these plaintiffs was by the defendant on a thirty houri a week basis. It was under no legal obligation to enter into any contractual relation with the federal government. By doing so it subjected itself to such restrictions as were imposed by the latter. One of these restrictions put into effect for the obvious reason of spreading employment was that the number of hours of employment in each week was not to exceed thirty. The city thus established the basis for these laborers employed upon these projects to secure vacation pay after serving not less than thirty-two weeks of thirty hours per week in the aggregate. Except as to the maximum General Laws 149 §30 does not establish a week’s work for city laborers.
It appears that this same question was presented to the Attorney General of this Commonwealth and his opinion is in the Beport of the Attorney General for the year ending November 30, 1934 on page 116. Of course this opinion has no force at law but it has some value as showing the judgment of the chief law officer of the Commonwealth and supports our own view.
*374 The facts being undisputed, the finding of the Trial Court was in reality a ruling at law. In that ruling we find no prejudicial error.